IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JORGE AMAYA, *et al* | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 14–00446–JMC |
| POWER DESIGN, INC. | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * *

## **MEMORANDUM OPINION**

Plaintiffs Jorge Amaya, Miguel Martinez, Carlos A. Real, Jamie Zubieta, Jose Sanabria, and Donaciano Cruz, (collectively the "Plaintiffs"), brought suit against Defendant Power Design, Inc. on behalf of themselves and all other similarly situated persons for alleged violations of the Fair Labor Standards Act ("FLSA") and related state laws. Pursuant to the terms of their settlement agreement, the parties consented to be bound by a magistrate judge's determination as to the appropriate amount of attorneys' fees and costs to be awarded to Plaintiffs. (ECF No. 69 & 88); *see also* 28 U.S.C. § 636(c). I have considered Plaintiff's Motion for Attorneys' Fees (and accompanying supplement), Defendant's Response in Opposition thereto, and Plaintiff's Reply in support thereof. (ECF Nos. 92, 93, 95, 96). No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the foregoing reasons, an award of $347,655.53 in attorneys' fees and $7,571.71 in costs is appropriate.

I. **BACKGROUND**

Six construction worker Plaintiffs originally filed a collective action against Defendant alleging that Defendant had failed to fairly compensate them for all time worked, including overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), the Maryland Wage

Payment and Collection Law, and the Maryland Workplace Fraud Act. (Compl., ECF No. 1). Ultimately, 27 additional plaintiffs joined the suit, although three plaintiffs dropped out prior to settlement. (Pls.' Mot. for Att'ys' Fees. ECF No. 92 at 4, 8).

Rather than engage in formal discovery, Plaintiffs and Defendant agreed to file a Motion for Conditional Certification and Motion for Summary Judgment, respectively. (ECF No. 92–14). Accordingly, on February 4, 2015, Defendant filed its Motion for Summary Judgment, (ECF No. 31), and, on February 5, 2015, Plaintiffs filed their Motion for Conditional Certification, (ECF No. 33). Defendant then moved to stay Plaintiffs' Motion for Conditional Certification until the Court ruled upon its Motion for Summary Judgment. (ECF No. 34). Plaintiffs opposed Defendant's motion by letter. (ECF No. 36). The Court granted Defendant's Motion to Stay on March 6, 2015. (ECF No. 37). Shortly thereafter, on May 28, 2015, the Court also granted Defendant's Motion for Summary Judgment and entered judgment in favor of Defendant as to all state and federal claims, holding in pertinent part that the Davis-Bacon Act ("DBA") and Contract Work Hours and Safety Standards Act ("CWHSSA") precluded a private right of action under the FLSA and precluded Plaintiffs' state law claims. (ECF Nos. 40 & 41).

On June 22, 2015, Plaintiffs noticed their appeal of the portion of the Court's Order involving the interplay between the DBA, CWHSSA, and FLSA, which addressed an important and unresolved issue that attracted amicus support on both sides, including from the Department of Labor. (ECF No. 42). On August 15, 2016, the Fourth Circuit Court of Appeals vacated this Court's decision and remanded the case for further proceedings. (ECF No. 45). Upon remand, the parties engaged in extensive settlement discussions over many months, ultimately filing five joint motions for extension of time to allow these discussions to conclude prior to the initiation of formal discovery. (ECF Nos. 50, 52, 54, 59, 61).

On or about April 20, 2017, Plaintiffs informed the Court that a settlement had been reached. (ECF No. 65). After consenting to jurisdiction before a magistrate judge to approve the settlement, (ECF Nos. 69 & 88), the parties filed their Joint Motion to Approve Settlement on September 28, 2017. (ECF No. 88). While the agreement settled the payment to Plaintiffs themselves (ultimately, in the amount of $159,020.83 for 30 individual plaintiffs, representing all of their asserted unpaid wages plus 40% of liquidated damages), (ECF No. 95 at 19), the agreement included both parties' consent to be bound by my determination as to an award of attorneys' fees and costs. (ECF No. 65). Plaintiffs now seek $493,376.50 in fees and $7,571.71 in costs. (Pls.' Reply, ECF No. 96 at 20). Defendant does not challenge the amount of costs, but argues that the fee request is excessive and should be reduced by approximately 45% to $270,833.55. (Ex. 3 to Def.'s Opp'n, ECF No. 95–3).

## II. STANDARD OF REVIEW

Section 216(b) of the FLSA expressly provides that "in addition to any judgment awarded to the plaintiff or plaintiffs," the Court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Though a settlement is not a judgment, attorney's fees are virtually always part of an FLSA resolution, and the parties here have specifically provided for a determination of such fees as part of their settlement agreement. (ECF No. 88–1 at 2). In such cases, the Court is guided by a "reasonableness" standard. *Beam v. Dillon's Bus Service, Inc.*, Civ. No. DKC–14–3838, 2015 WL 4065036, *5 (D. Md. July 1, 2015).

In calculating an award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.,* 549 F.3d 313, 320–21 (4th Cir. 2008). "To ascertain

what is reasonable in terms of hours expended and the rate charged, the Court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (internal citations and quotation marks omitted). The *Johnson* factors, as characterized by the Fourth Circuit in *McAfee*, include:

> (1) [T]he time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Corral v. Montgomery Cnty.*, 91 F.Supp.3d 702, 712–13 (D. Md. 2015) (citing *McAfee*, 738 F.3d at 88 n.5). Next, courts "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and, finally, award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quoting *Johnson*, 488 F.2d at 244).

As the Fourth Circuit's discussion in *McAfee* illustrates, courts have been less than consistent in determining whether the *Johnson* factors "inform the calculation of the lodestar," whether they instead should be used to make "upward or downward adjustments to it," or whether they should serve "both purposes." *McAfee*, 738 F.3d at 89. Without determining

4

which, if any, approach is correct, the Fourth Circuit noted with approval that determination of the lodestar multipliers often subsumes consideration of many of the *Johnson* factors. *Id.* at 89–90.

## III. DISCUSSION

In its Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs, Defendant argues that Plaintiffs' lodestar calculation is based on an unreasonable number of hours worked at virtually every stage of litigation, and that Plaintiffs cannot recover attorneys' fees for certain tasks including purely administrative/clerical tasks, time spent retaining new clients, vague time entries, and time spent on unsuccessful claims. In addition, Defendant also argues that the amount of fees should be further reduced because Plaintiffs did not obtain, in settlement, all of the relief sought in their original Complaint.

Because Defendant's Opposition does not take issue with the rates requested for Plaintiffs' counsel and those rates are in accord with the rates found in Appendix B to the Local Rules of this Court and appropriately supported by affidavits, (ECF Nos. 92–5, 92–6, 92–7, 92–8, 92–9, 92–10, 92–11), I find the rates to be reasonable. Thus, the Court will only address whether the number of hours expended by Plaintiffs' counsel was reasonable for the various stages of the case, whether the time expended is appropriately compensable, and the relative degree of success that was obtained in the settlement. For the proceedings at the District Court level, the Court will utilize the categories set forth in Appendix B to the Local Rules. The Court will then consider the proceedings at the appellate level.

### A. Case Development, Background Investigation, and Case Administration

After voluntarily "no-charging" 63.3 hours ($13,545.00) in this category, Plaintiffs seek 220.2 hours for a fee of $57,042.50. Defendant contends that, as with every category, Plaintiffs

5

seek recovery for "purely administrative and/or clerical tasks." (Def.'s Opp., ECF No. 95 at 11). While Defendant is correct that certain tasks purely clerical in nature are not properly categorized as attorneys' fees (e.g., copying or scanning documents), other tasks (e.g., setting up and organizing the file) are specifically contemplated by our Local Rules. Furthermore, the Court disagrees that "organizing documents" is a noncompensable task given that organization implies an analysis of the documents so as to categorize them appropriately for efficient use later in the case.

Additionally, given the number of plaintiffs, the fact that many were non-English speaking, and the factual investigation that reconstructing the hours worked for each workday would entail, the time spent in these initial steps saves time later in the case. Similarly, the analysis required for framing these claims in the context of the other federal laws at issue supports Plaintiffs' claim that this case was not routine. The Court also does not agree that efforts spent researching, refining, and informing the potential pool of affected plaintiffs is noncompensable under the facts of the case, nor that the entries here were too vague as to be properly evaluated.

Accordingly, after careful review of each entry, the Court will allow fees for the vast majority of these tasks.

The Court will disallow $570 as follows:

> AD: $330.00 in fees for tasks that the Court views as clerical (9/13/2013; 9/16/2013; 9/21/2013; 9/23/2013; 12/3/2013; 12/17/2013; 2/7/2014; 2/10/2014; 2/14/2014; and 2/19/2014).
>
> CCS: $240.00 in fees for tasks that the Court also views as clerical (6/6/2014).

### B. Pleadings

After voluntarily "no-charging" 3.4 hours ($735.00) in this category, Plaintiffs seek fees for 70.05 hours totaling a fee of $24,265.00. After careful review of each entry, the Court disallows $1995.00 as follows:

- CC: $1755.00 in fees for unsuccessful claims/excessive time/vague entries on 10/3/2013; 11/25/2013; 12/3/2013; and 12/5/2013. This includes reducing first the entries on 10/3/2013 and 11/25/2013 by $225.00 each, and then entries on 12/3/2013 and 12/5/2013 by a combined amount of $945.00.
- AD: $165 in fees for clerical time on 2/19/2014 and unnecessary duplication on 4/8/2014 (disallowing $75.00 of that entry).
- CCS: $75.00 in fees for unnecessary duplication on 11/4/14.

### C. Motions

After voluntarily "no-charging" 43 hours ($11,515.00) in this category, Plaintiffs seek 243.4 hours, totaling a fee of $75,365.50. After carefully reviewing each entry and considering each motion, the Court disallows a total of $6,832.50 as set forth below.

The Court first disallows $6,037.50.

- LBB: Fees for unsuccessful claim on 3/5/2015.
- DK: Fees for vague entries on 3/1/2015 and 3/6/2015.

Contrary to Defendant's assertion, there was an agreement between the parties memorialized in an email, (ECF No. 92–14), pursuant to which Plaintiffs would file their Motion for Conditional Certification and Defendant would file its Motion for Summary Judgment. Thus, it would be inappropriate to disallow the recovery of fees for reasonable time spent. The Court will, however, disallow $795.00 related to the Motion.

LBB: Fee for vague entry on 2/6/2015.

### D. Settlement

After voluntarily "no-charging" 29 hours ($10,077.50) in this category, Plaintiffs seek 162.5 hours totaling a fee of $43,627.50. The Court notes that there were many rounds of settlement discussions at various points in the case, stretching over a number of months. Each offer involved recalculating settlement amounts for each plaintiff, communicating and explaining the offer to 30 individual plaintiffs, many of whom are Spanish-speaking. Thus, the amount claimed is not surprising. After carefully reviewing each time entry, the Court will deduct $247.50.

LBB: Fee for vague entry on 10/21/2016.

### E. Drafting Fee Application

After voluntarily "no-charging" 14.10 hours ($3740.00) in this category, Plaintiffs seek 131.4 hours totaling a fee of $53,815.00. Given that there were dozens of pages of time entries to be reviewed and evaluated, the Court would expect a fairly sizeable fee request for this category. Nonetheless, after carefully reviewing each entry, the Court will disallow $14,725.00 including what Plaintiffs concede are triple entries of the same time for DK on 11/13/2017 and what the Court deems to be an excessive number of hours on 11/15/2017, 11/17/2017 and 11/18/2017.

### F. Appeal

Plaintiffs claim 704.2 hours totaling $238,499.00 for their efforts on appeal. The Court notes that at times, multiple individuals were working on the brief, resulting in some duplication of effort. Also, as Defendant argues, the Court concludes that the time spent in drafting the initial brief and reply, and preparing for oral argument in light of the experience level of the

individuals involved, was excessive. The Court also agrees with Defendant that several of the time entries are too vague for the Court to credit the entries. After carefully reviewing each time entry, the Court will disallow $60,000.

In summary:

**TOTAL FEES CLAIMED:** $493,376.50

**TOTAL FEES DISALLOWED:** – $84,370.00

**TOTAL NET FEE ALLOWED:** = $409,006.50

### G. Degree of Success

The Court must now address the remaining *Johnson* factor and award a percentage of this net fee amount based on "the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quoting *Johnson*, 488 F.2d at 244). Defendant urges that the fees should be heavily discounted because the Plaintiffs obtained in their settlement significantly less than they sought in their complaint, and that their state law claims (including claims for injunctive relief) were wholly unsuccessful, given that the summary judgment entered by this Court as to those claims was not challenged on appeal.

It is true that Plaintiffs were not successful on their state claims. However, a reduction is only appropriate to the extent that the unsuccessful claims were unrelated to the successful ones. *McAfee*, 738 F.3d at 91. As recognized by this Court, "A claim is unrelated if it is 'distinct in all respects from [plaintiff's] successful claims. . .Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.'" *Corral*, 91 F.Supp.3d at 719 (quoting *Hensley v. Eckerhard*, 461 U.S. 424, 440 (1983). Here, the state claims and FLSA claim stemmed from the same set of facts—Defendant's failure to pay Plaintiffs at the

9

appropriate rate for all hours worked—and so this would not, by itself, seem to support a reduction of the Court's lodestar figure. However, Plaintiffs' state claims, if successful, theoretically could have increased the amount of recoverable damages to those allowed in the treble damages provisions, and also could have led to injunctive relief. Losing the availability of such damages at the summary judgment stage could support a reduction based on a "lack of success" analysis as Defendant suggests.

However, several factors mitigate against a significant reduction of the Court's lodestar figure. First, through their successful appeal, the Plaintiffs clarified a previously unanswered question of law regarding the interaction between FLSA, DBA, and CWHSSA that will benefit future plaintiffs similarly situated. When the effect of a case reaches well beyond the Plaintiffs themselves and serves a public purpose, appropriate weight is to be afforded. *See Corral*, 91 F.Supp.3d at 720 (explaining *Mercer v. Duke University*, 401 F.3d 199, 209 (4th Cir. 2005), where although plaintiff received only nominal damages, she was deserving of attorneys' fees where the effect of the decisions reached well beyond plaintiff herself).

Additionally, when a case ultimately resolves by way of settlement, it is inappropriate for a court to simply compare the damages set forth in the complaint with the amount of the settlement. If a plaintiff alleges a $100,000.00 loss in his or her complaint, fairly estimates a 50% risk of loss at trial, and settles the claim pre-discovery for $50,000.00, it is difficult to overly criticize the settlement based on the fact that it was for an amount less than the complaint's *ad damnum*. Thus, if a plaintiff in such a situation today can achieve a settlement amount that in good faith reasonably estimates the risk of loss and the value of being paid today rather than at the time of any verdict, it is difficult for the Court to regard such a result as significantly unsuccessful. This is especially true in an FLSA case where the parties—and,

ultimately, the Court itself—agreed that the settlement amount represented a reasonable compromise of disputed claims. (Order Granting Joint Mot. for Approval of Settlement Agreement, ECF No. 89).

This is not to say that resolving a case by settlement immunizes a plaintiff's fee request from further reduction for lack of success. But under the facts of the present case, where a conditional class received all of their disputed overtime plus a 40% premium prior to formal discovery and, in the process, clarified an important principle of law for future plaintiffs, the Court will reduce its lodestar calculation by only 15% rather than the 35% sought by the Defendant. Thus, the Court's lodestar calculation of $409,006.50 is reduced by $61,350.98 to $347,655.53.

### H. Costs

Finally, Plaintiffs request an award of costs in the amount of $7,571.71. Defendant did not take issue with this amount in its Opposition and the amount is properly supported by appropriate declaration.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Costs, (ECF No. 92), is GRANTED in part and DENIED in part. Plaintiffs are awarded $347,655.53 in attorneys' fees and $7,571.71 in costs, for a total award of $355,227.24. A separate Order shall follow.

Dated: February 2, 2018 /s/
J. Mark Coulson
United States Magistrate Judge